IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES WILLIAMSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-772-SMD |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| *Acting Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION & ORDER**

On April 26, 2018, Plaintiff James Williamson ("Williamson") filed for a period of disability and disability insurance benefits ("DIB") alleging he became unable to work beginning April 28, 2011. Williamson's application was denied at the initial administrative level. He then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Williamson was not disabled. Williamson then appealed the ALJ's decision to the Social Security Appeals Council, which denied review. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Williamson now appeals that decision under 42 U.S.C. § 405(g).[2] For the reasons that follow, the undersigned AFFIRMS the Commissioner's

---

[1] Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, is substituted for Andrew Saul as Defendant in his official capacity in this action. *See* FED. R. CIV. P. 25(d)(1).

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. *Pl.'s Consent* (Doc. 8); *Def.'s Consent* (Doc. 9).

decision.

I.  **STATUTORY FRAMEWORK**

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—

---

[3] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.\* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

2

based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.  STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings.

---

[4] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

*Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

### III. ADMINISTRATIVE PROCEEDINGS

Williamson was fifty-four years old on December 31, 2016, the date he was last insured. Tr. 145, 157. He has a college degree, and his past work is a composite job consisting of telephone maintenance mechanic, private branch exchange installer, and store manager. Tr. 38-41, 53-55, 170. Williamson alleged disability due to depression, anxiety, post traumatic stress disorder ("PTSD"), neck pain with prior surgery, and back pain with prior surgery. Tr. 169.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Williamson's disability determination. At step one, the ALJ found that Williamson did not engage in substantial gainful activity from his

alleged onset date through his date last insured. Tr. 19. At step two, the ALJ found that Williamson suffers from the following severe impairments: "degenerative disc disease (DDD) status post fusion at C3-4, lumbago, status post bilateral meniscus repair, obesity, panic disorder, generalized anxiety disorder (GAD), and major depressive disorder (MDD)[.]" Tr. 19. At step three, the ALJ found that, through his date last insured, Williamson "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments[.]" Tr. 20.

> The ALJ proceeded to determine Williamson's RFC, articulating it as follows:
>
> [T]he claimant had the residual functional capacity to perform light work . . . except that he can occasionally climb ladders, ropes, or scaffolds; could frequently climb ramps and stairs; could occasionally stoop, kneel, crouch, or crawl; could never reach overhead; could frequently reach in other directions; was limited to the simple routine tasks of unskilled work involving simple work decisions with few changes; could occasionally interact with coworkers but interaction should not have included tandem or group tasks; could occasionally interact with supervisors but supervision should have been straightforward and tactful; and could have occasional and non-transactional contact with the public.

Tr. 22. At step four, the ALJ found that, through his date last insured, Williamson was unable to perform any past relevant work. Tr. 26. At step five, the ALJ utilized the testimony of a VE and determined that "considering [Williamson's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Williamson] could have performed." Tr. 27. Those jobs included "office helper"; "marker"; and "electrical assembler." Tr. 27. Accordingly, the ALJ concluded that Williamson was not under a disability at any time from his alleged onset date through the date he was last insured. Tr. 28.

## IV. ANALYSIS

Williamson argues that the Commissioner's decision should be reversed for two reasons. First, Williamson contends that the ALJ improperly substituted his opinion for that of Dr. Donald E. Hinton, a State agency psychological consultant. Pl.'s Br. (Doc. 13) pp. 12-15. Second, Williamson argues that the ALJ erred by mechanically applying the age criteria of the Grids to determine that he is not disabled. *Id.* at 15. As explained below, Williamson's arguments fail.

### A. The ALJ Did Not Substitute His Opinion For Dr. Hinton's.

In determining Williamson's RFC, the ALJ considered the opinion of Dr. Hinton, which he found to be persuasive. Tr. 25. Dr. Hinton opined, in relevant part, that Williamson can "understand, remember, and carry out very short and simple *instructions*. Detailed and complex *instructions* should be limited in the workplace." Tr. 73 (emphasis added). The ALJ did not explicitly include this limitation in Williamson's RFC. Instead, he limited Williamson "to the simple routine *tasks* of unskilled work involving simple work *decisions* with few changes." Tr. 22 (emphasis added). Williamson argues that by rewording Dr. Hinton's limitation, the ALJ materially altered its meaning in his RFC and therefore improperly substituted his opinion for that of Dr. Hinton. Pl.'s Br. (Doc. 13) p. 13. Additionally, Williamson contends that, even under the actual RFC imposed by the ALJ, he is unable to perform the jobs listed by the VE. *Id.* at 14-15.

The ALJ has the responsibility of assessing a claimant's RFC at the hearing level. 20 C.F.R. § 404.1546(c). In performing this task, the ALJ is required "to consider all of the

medical and other evidence of record[.]" *Ramos v. Comm'r of Soc. Sec.*, 2021 WL 960688, at *6 (M.D. Fla. Mar. 15, 2021). Importantly, the ALJ is not required to use "magic words in a claimant's RFC assessment." *Carbone v. Comm'r of Soc. Sec.*, 2017 WL 1476283, at * 3 (M.D. Fla. Mar. 3, 2017). And, "there is no requirement that the ALJ include every limitation [from a physician's opinion] verbatim" into an RFC determination. *Hilton v. Comm'r Soc. Sec.*, 2016 WL 561364, at *3 (M.D. Fla. Feb. 12, 2016); *see also Billups v. Colvin*, 2013 WL 6840383, at *8 (M.D. Ala. Dec. 27, 2013) (stating that there is no requirement that an ALJ adopt an expert opinion verbatim when determining a claimant's RFC); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (noting that the ALJ is not required "to specifically address every aspect of an opinion or every piece of evidence in the record").

Here, the ALJ found that Williamson could perform "the simple routine tasks of unskilled work involving simple work decisions with few changes[.]" Tr. 22. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time[.]" 20 C.F.R. § 404.1568(a). Unskilled work requires, in part, "[u]nderstanding, remembering, and carrying out *simple instructions*." SSR 96-9p (emphasis added). *See also Washington v. Berryhill*, 2018 WL 3078763, at *7 (S.D. Ala. June 20, 2018) (citing *Anderson v. Astrue*, 2011 WL 3843683, at *3 (S.D. Ala. Aug. 30, 2011)) (finding that the Social Security Regulations "read together, establish that unskilled work requires the ability to understand, carry out, and remember simple instructions and duties . . ."). "Thus, [an] ALJ's reference to unskilled work may be considered as

incorporating [a] plaintiff's abilities to understand, carry out, and remember short and simple instructions on a sustained basis." *Ealy v. Kijakazi*, 2021 WL 4443702, at *10 (M.D. Ala. Sept. 28, 2021) (quoting *Shawbaker v. Colvin*, 189 F. Supp. 3d 1168, 1174 (D. Kan. 2016)).

By limiting him to unskilled work, the ALJ implicitly found that Williamson had the mental capacity to understand, carry out, and remember simple instructions. *See Deidre T. v. Comm'r, Soc. Sec. Admin.*, 2018 WL 7823090, at *17 n.29 (N.D. Ga. Sept. 28, 2018) ("[B]y limiting claimant to unskilled work, [the ALJ] implicitly found that she retained the mental capacity to understand, carry out, and remember simple instructions[.]"). This inherent limitation is substantially the same as the limitation imposed by Dr. Hinton—i.e., that Williamson could understand, remember, and carry out very short and simple instructions, whereas detailed and complex instructions should be limited. Although the ALJ was not required to adopt Dr. Hinton's specific limitation, he did so nonetheless—albeit inexplicitly—by limiting Williamson to unskilled work. As such, the undersigned finds that the ALJ did not improperly substitute his opinion for that of Dr. Hinton when formulating Williamson's RFC.[6]

---

[6] Further, two medical opinions indicate that Williamson was only moderately limited in his ability to understand and carry out detailed instructions and that he was mildly limited in his ability to carry out simple instructions. Tr. 72, 372. In determining Williamson's RFC, the ALJ specifically relied on these opinions. Tr. 25-26. Thus, the undersigned finds that the ALJ's decision not to limit Williamson to only simply instructions in his RFC is supported by substantial evidence. *See Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *7 (11th Cir. 2022) (finding unpersuasive the plaintiff's argument that the ALJ erred in limiting her to simple *tasks* instead of simple *instructions* in her RFC because "the decision not to include a limitation to only simple instructions" was supported by substantial evidence where state agency psychologists found that she was "only moderately limited in her ability to carry out detailed instructions").

Next, Williamson argues that the jobs cited by the VE, which all require a reasoning level of two, cannot be performed by someone with his RFC.[7] Pl.'s Br. (Doc. 13) pp. 13-14. Specifically, Williamson argues that his RFC, which limits him to "simple routine tasks of unskilled work," does not comport with a reasoning level two job, which requires the ability "to carry out detailed but uninvolved written or oral instructions." *Id.*; DOT App'x C, 1991 WL 688702 (4th ed. rev'd 1991). Instead, Williamson asserts that his RFC "seems to correspond to a [ ] reasoning level of one," which requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." Pl.'s Br. (Doc. 13) pp. 13-14; DOT App'x C, 1991 WL 688702 (4th ed. rev'd 1991).

The Eleventh Circuit and courts within it have found that a limitation to simple, routine, and repetitive tasks/work is not inconsistent with a reasoning level two job. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020); *Pennington v. Kijakazi*, 2022 WL 816076, at *9 (M.D. Ala. Mar. 17, 2022) (finding that the plaintiff's RFC, which included a limitation to "simple routine tasks involving no more than simple, short instructions and simple work-related decisions" was not inconsistent with level two reasoning jobs); *Riddle v. Colvin*, 2013 WL 6772419, at *6 (M.D. Ala. Dec. 20, 2013)

---

[7] Williamson's argument is limited to whether his RFC allows him to perform the jobs cited by the VE, which all require a reasoning level two. He does not argue that the ALJ failed to recognize or address an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). *See* SSR 00-04p; *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018). Arguments not briefed before the Court are deemed abandoned. *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue[.]"); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (concluding claimant abandoned certain issues by not expressly raising them).

(concluding that jobs with reasoning level two are consistent with an ability to perform simple, routine, and repetitive tasks); *Hedges v. Comm'r of Soc. Sec.*, 2021 WL 1186836, at *6 (M.D. Fla. Mar. 30, 2021) ("[T]he majority of courts in this circuit have relied on *Valdez* to bolster their finding that a reasoning level two job is not inconsistent with simple, routine, and repetitive work."). Thus, Williamson's limitation to "simple routine tasks of unskilled work" permits him to perform the reasoning level two jobs cited by the VE. *See Peterson v. Comm'r of Soc. Sec.*, 2021 WL 3163662, at *3 (11th Cir. July 27, 2021) ("There is no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description of jobs requiring level two reasoning.").

Further, the inherent limitations in unskilled work—i.e., the ability to understand, carry out, and remember short and simple instructions on a sustained basis—does not run afoul of level two reasoning jobs. *See Ealy v. Kijakazi*, 2021 WL 4443702, at *10 (M.D. Ala. Sept. 28, 2021) ("Each job has a reasoning level of 2, which correlates to unskilled work as listed in [the plaintiff's] RFC."); *Anderson*, 2011 WL 3843683, at *4 (S.D. Ala. Aug. 30, 2011) ("Thus, there was no actual conflict between the [VE's] testimony that [the plaintiff] could perform the cited unskilled jobs and the applicable DOT information because all of the jobs have an SVP of 2, which correlates to unskilled work."); *Eplee v. Saul*, 2019 WL 5550079, at *4 (W.D.N.C. Oct. 25, 2019) ("Furthermore, a limitation to 'unskilled work' indicates that any instructions would be uninvolved to satisfy reasoning level two concerns, which require employees to carry out 'detailed but uninvolved'

instructions."). As such, the undersigned finds that the reasoning level two jobs cited by the VE do not conflict with Williamson's RFC.

### B. Any Error in Mechanically Applying the Grids Is Harmless.

Williamson argues that the ALJ erred by mechanically applying his age to the Grids to determine that he was not disabled. Pl.'s Br. (Doc. 13) p. 15. Specifically, Williamson contends that the ALJ applied the Grids "to an individual of 'closely approaching advanced age,' age 54 years and 8 months," but "should have applied the [Grids] to an individual age 55 or 'advanced age.'"[8] *Id.* If the ALJ had applied the latter, Williamson argues, the Grids would have deemed him disabled. *Id.*

An ALJ may rely on the Grids to determine whether other work exists in the national economy that a claimant can perform. *Patterson v. Bowen*, 799 F.2d 1455, 1458 (11th Cir. 1986). Grids are based on the claimant's RFC, age, education, and work experience. *Id.* "Exclusive reliance on the grids is not appropriate either when [a] claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Walker*, 826 F.2d at 1002-03 (quotation omitted). "When the grids are not controlling, the preferred method of demonstrating job availability is through expert vocational testimony." *Id.* at 1003.

Although the ALJ may rely on age as evidence of adaptability to a new work environment, a claimant may proffer "substantial credible evidence that his ability to adapt

---

[8] The SSA considers someone between the ages of 50 and 54 a "person closely approaching advanced age," while someone who is 55 or older is considered a "person of advanced age." 20 C.F.R. § 404.1563(d), (e).

11

is less than the level established under the grids for persons his age." *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984). When such evidence is presented, the ALJ cannot mechanically apply "the age factor of the grids and must instead establish the claimant's ability to adapt to a new work environment by independent evidence." *Id.*; *see also Patterson*, 799 F.2d at 1458-59. "If, on the other hand, the claimant does not make such a proffer, the ALJ's mechanistic use of the age grids" is harmless error. *Patterson*, 799 F.2d at 1459.

Williamson's argument that the ALJ erred by not treating him as a person of advanced age fails for two reasons. First, whether Williamson was of advanced age was unnecessary to his disability determination because the ALJ did not rely exclusively on the Grids. At step five, the ALJ determined that, if Williamson had the RFC to perform the full range of light work, the Grids would support a finding of "not disabled." Tr. 27. But, because Williamson's "ability to perform all or substantially all of the requirements of light work was impeded by his exertional and nonexertional limitations," the ALJ utilized the testimony of a VE "[t]o determine the extent to which the limitations eroded the unskilled light occupational base." Tr. 27. As such, the ALJ's decision did not rely solely on the Grids, making the determination of whether Williamson was a person of advanced age or closely approaching advanced age unnecessary. *See Miller v. Comm'r of Soc. Sec.*, 241 F. App'x 631, 635 (11th Cir. 2007) (concluding that the ALJ's decision was not made in reliance on the Grids where the ALJ also utilized the testimony of a VE, making unnecessary the determination of whether the claimant was of advanced age).

Second, the ALJ's categorization of Williamson as a person closely approaching advanced age is supported by substantial evidence. Williamson was 54 years old on the date he was last insured. Tr. 26. Therefore, the ALJ's initial determination that Williamson was a person closely approaching advanced age is correct. *See* 20 C.F.R. § 404.1563(d). Williamson contends that he should have been treated as a person of advanced age because he was only four months short of turning 55 after his date last insured. Pl.'s Br. (Doc. 13) p. 15. But this is not substantial credible evidence that Williamson's ability to adapt to new work environments was less than the level established under the Grids for persons his age. Thus, any mechanistic application of the Grids was harmless error. *See Miller*, 241 F. App'x at 631. And, given the VE's testimony that there were three jobs in significant numbers in the national economy that Williamson could perform based on his age, education, and RFC, substantial evidence supports the ALJ's conclusion that he could perform the listed jobs.

## V. CONCLUSION

For the reasons explained above, the undersigned finds no reversible error in the Commissioner's decision. Therefore, the decision is AFFIRMED.

A separate judgment will issue.

DONE this 23rd day of June, 2022.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE